IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| LOGAN WESLEY III | § | |
| v. | § | CIVIL ACTION NO. 5:22cv78 |
| SHERIFF JEFF NEAL, ET AL. | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Logan Wesley III, a former inmate of the Bowie County Correctional Center proceeding *pro se* but not *in forma pauperis*, filed this civil action complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named defendants are Sheriff Jeff Neal, Captain Walker, Sgt. Malone, Sgt. Holt, Officer Novell, and Officer Adams.

### I. The Plaintiff's Claims

In his complaint, Plaintiff says that he was housed in protective custody at the Bowie County Correctional Center on July 3, 2020, and officers trained by and under the supervision of Sheriff Neal allowed an inmate named Marquicce Jones to assault him. Dkt. No. 1 at 4. He explains that at around 1 to 2 p.m., Officer Adams came to take Plaintiff to use the phone, because the phone on his cell block had been destroyed by Jones. Adams radioed Officer Novell and told her to open Plaintiff's door. Novell asked if Adams was sure that he wanted to open cell 4, since cell 5 was open, and Adams said yes, it's okay, I got it. Plaintiff says that he came out of his cell and when he turned to shut his door, Jones struck him on the right cheek.

Plaintiff states that Sgt. Malone was the shift supervisor. She waited some four hours before having Plaintiff transported to Wadley Hospital. Plaintiff says that Malone also failed to make sure

that he received the liquid diet he was ordered after the assault. According to Plaintiff, there were several days that he went without eating and he sometimes got his food several hours after the other inmates. His family called to complain and officers began recording him getting his food, but it was still several hours later, after the other inmates had already eaten.

Plaintiff states that Sgt. Holt put him on suicide watch when Plaintiff became upset because Officer Menendez threw his liquid diet on the floor "as though Plaintiff was a dog." *Id.* at 6. He explains that Menendez was supposed to hand him his food but instead dropped it on the floor. The nurse came along five minutes later and asked how he was doing, and he replied "I'm fine but if they are trying to kill me, they are doing a good job." *Id.* The nurse told Sgt. Holt that Plaintiff sounded suicidal, and an hour later, Holt came and took Plaintiff's clothes, shoes, and blanket knowing that he was recovering from a broken jaw. Plaintiff says that he was cold and shivering, and begged for his clothes back, but he was left without clothes, shoes, or a blanket for nine days in medical observation. The lights were on 24 hours a day and there was no TV or radio. After nine days he had a video visit with a counselor, who said that there was no reason for him to be placed on suicide watch.

Next, Plaintiff states that Captain Walker had him put in medical observation, which he says is equivalent to solitary confinement. He was in there for about two months without a TV or radio and the lights being on 24 hours a day. Plaintiff says that Walker failed to contact the kitchen to ensure that he was fed like the other inmates and failed to make sure that he had hot water to mix the powder given for his liquid diet.

Plaintiff says that Sheriff Neal is in charge of the jail and is legally responsible for its operations. He contends that the unsafe conditions and lack of protocol in protective custody housing is what caused the assault to occur. Plaintiff says that he now suffers from permanent facial injuries and cannot taste food on the left side of his mouth.

Plaintiff says that when he returned from the hospital, he was taken to a detective's office to give a statement on the incident. The officer asked if he wanted to file charges on Jones and he said yes. Plaintiff says that he was not made aware that he needed to file a grievance, and when he filed charges, he thought this was all he had to do. However, Plaintiff states that the Bowie County

Correctional Center is now saying that they cannot find the records of his filing charges on Jones. They also have a report saying that Plaintiff and Jones had an ongoing dispute which is not true. Plaintiff states that the detective asked if Plaintiff and Jones were "into it" and Plaintiff told him that they were not and that they did not have a history.

Plaintiff attaches a copy of an incident report from the Bowie County Sheriff's Office dated July 4, 2020. The report says that on July 3, 2020, at about 12:35 p.m., Jones and Plaintiff were involved in an altercation. Jail staff reported that Jones said Plaintiff had been making antagonizing statements toward him for days. Plaintiff was removed from his cell and Jones refused to enter his, and Plaintiff and Jones began fighting. Plaintiff was struck in the face by Jones. Jail staff stated that the fight was mutual. Plaintiff was later taken to UT Health in Tyler for further evaluation.

The report states that a video was obtained which shows Adams along with Jones inside L Pod. Jones is shadow-boxing with his shoes on his hands. Adams opens Plaintiff's cell door and Plaintiff exits. Jones and Plaintiff take up fighting positions with raised fists. They accost one another and a fight ensues, in which Jones is the victor and Plaintiff is knocked to the floor. Adams gets in between them and keeps them apart until additional officers arrive to put Jones back in his cell. Plaintiff was taken to Wadley Hospital where it was determined that his jaw was broken or dislocated. He was taken to Tyler where he had surgery for his injuries.

The report says that Adams gave a narrative which said that Jones walked up to Plaintiff's cell with both of his hands in a closed-fist fighting style stance. Plaintiff walked out of his cell with both of his hands up. Adams ordered them to stop and told Jones for the second time to return to his cell. Jones struck Plaintiff in the face and Plaintiff began to fight back.

Adams stated that he interviewed Plaintiff, who denied that it was a case of mutual combat. Plaintiff said that Jones struck him first and without provocation, and that he did not square up until after Jones struck him. Adams told Plaintiff that the video showed a different version of events, that Plaintiff squared up before the fight.

Adams also interviewed Jones, who denied being the aggressor and said that he wanted to file a complaint because Plaintiff had busted his lower lip in the altercation. He said that he did not know

why Plaintiff wanted to fight him. Jones acknowledged shadow boxing prior to the altercation, saying that he often did this as a form of exercise.

On May 18, 2023, the Court ordered Plaintiff to serve process in accordance with the Federal Rules of Civil Procedure, giving instructions as to how to do so. Summons were delivered to Plaintiff and he was advised that any defendant not served within 90 days could be dismissed from the lawsuit without prejudice. Although there is no indication on the docket that any of the Defendants have been properly served, motions to dismiss have been filed by Neal, Malone, and Walker, as well as answers conditioned upon these motions to dismiss. Plaintiff has filed two responses to the motions to dismiss.

## II. The Motions to Dismiss

A. Sheriff Neal

Sheriff Neal's motion to dismiss explains that he received the complaint by certified mail on July 17, 2023. This was done through four mailing envelopes, labeled "Sheriff Jeff Neal (Sgt. Malone)," "Sheriff Jeff Neal (CO Adams)," "Sheriff Jeff Neal (Capt. Walker)," and "Sheriff Jeff Neal (CO Novell)." Neal states that at the time the envelopes were received, Walker and Malone were employed by the Bowie County Sheriff's Office, but Holt, Adams, and Novell were not. Copies of the envelopes are attached to the motions to dismiss, which show that they were sent certified mail by Plaintiff himself. Dkt. No. 11-1 at 2-6.

Sheriff Neal sets out Plaintiff's allegations against him and says that these represent claims of *respondeat superior* liability, which is inapplicable in § 1983 lawsuits. He also contends that Plaintiff does not make clear whether he had been convicted or was a pre-trial detainee and has not stated a claim under the Eighth or Fourteenth Amendments, or 42 U.S.C. § 1983.[1] Neal also says that Plaintiff's request for relief in the form of "some type of accountability and reparations" does not set out a viable claim for relief because § 1983 does not provide a means to criminally prosecute anyone or to reprimand jail staff. Neal says that he is filing an answer subject to the motion to dismiss and will if

---

[1] Bowie County court records show that Plaintiff was convicted on July 6, 2020, making him a pre-trial detainee at the time the initial assault occurred. In order to succeed in a § 1983 action based on episodic acts or omissions, a pre-trial detainee must show deliberate indifference by the defendants. *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996).

necessary file a motion for summary judgment based upon failure to exhaust administrative remedies, which he says that Plaintiff apparently admitted in his complaint.

Plaintiff's complaint says that Sheriff Neal "failed to protect inmate housed in protective custody in his facility." Dkt. No. 1 at 3. He goes on to say as follows:

> Sheriff Jeff Neal is the authoritative figure over the Bowie County Jail, inmates, and employees. He is legally responsible for the overall operations of the Bowie County Correctional Facility. The unsafe conditions and lack of protocol in protective custody is what caused the assault to occur. I now suffer from permanent facial disfigurement and can't taste food on the left side of my mouth. I have been and will continue to be irreparably injured by the conduct of the defendants.

*Id.* at 7.

B. Sgt. Malone

Plaintiff's claim against Sgt. Malone reads as follows:

> Sgt. Malone was the shift supervisor on July 3, 2020, and this incident took place on her watch. She waited approximately four hours before transporting me to Wadley Hospital. Sgt. Malone also failed to make sure that I received my liquid diet that I was ordered to follow due to the injuries sustained from the attack. There were several days that I went without eating and sometimes got my food several hours after the other inmates had already eaten. Once my family called and made several complaints the officers then started to record me getting my food at the request of Captain Walker. My food was still given to me several hours later after the other inmates had already eaten. (Dkt. No. 1, p. 6).

Sgt. Malone argues that Plaintiff asserts she was the supervisor and the incident took place "on her watch," and that he complains about minor delays in food service at some unspecified later date. She contends that this is a claim of liability under *respondeat superior*, which is inapplicable in §1983 lawsuits. She also argues that Plaintiff has not set out a claim under the Eighth or Fourteenth Amendments and that his request for relief does not state a claim.

C. Captain Walker

Plaintiff's claim against Captain Walker reads as follows:

> Captain Walker was responsible for placing me in medical observation which is equivalent to solitary confinement at BCCC. I was there for about two months. There was no TV or radio in the room and the lights were on 24 hours a day. Captain Walker failed to contact the kitchen just as the other officers did to ensure that I was fed like the other inmates. She also failed to make sure I had hot water to mix the powder given for my liquid diet. (Dkt. No. 1, p. 6).

Walker argues that Plaintiff's claims against her are founded on *respondeat superior*, which is not a

viable cause of action in § 1983 cases. She also argues that Plaintiff has not set out a claim under the Eighth or Fourteenth Amendments and that his request for relief does not state a claim.

D. Plaintiff's Responses

In his first response to the motions to dismiss, Plaintiff states that he was housed in protective custody, so there are policies, customs, practices and procedures which officials go by. The constitutional violations from these policies, customs, practices, and procedures not being followed is what caused his injury. He further contends that liability arises under § 1983 if a deprivation of constitutional rights was inflicted "pursuant to acts which the officers have officially sanctioned or ordered." Dkt. No. 17 at 1.

Plaintiff argues that claims which are not against the Texas Department of Criminal Justice or its employees are not subject to the TDCJ grievance procedure, and Texas Civil Practice and Remedies Code art. 14.005 does not apply and does not support dismissal of the lawsuit. He says that in enacting the Prison Litigation Reform Act, Congress "carved out an exception to the general rule that exhaustion is a prerequisite to filing suit under § 1983." Plaintiff argues that the incident report and ensuing investigation satisfies the exhaustion requirement. *Id.*

According to Plaintiff, Texas law provides that the Sheriff is the keeper of the county jail and the policymaker for the jail. Everyone, including medical staff, reports to the sheriff or his designated representative, and the sheriff "assists the facility in meeting its duties and high standard of protection for staff and inmates." *Id.* at 2. Plaintiff says that the sheriff shall provide and set specific protocols, policies, procedures, or customs as may be imposed by state or federal laws and regulations, and the sheriff is responsible for allowing dangerous inmates to be housed in protective custody as a way to control them.

Plaintiff further says that Walker, Malone, Holt, Novell, and Adams all remain part of his claim. He states that he is under no obligation to plead legal theories and has satisfied the notice pleading standard of Fed. R. Civ. P. 8 and has presented indisputable facts entitling him to relief under any applicable legal theory.

In his second response to the motions to dismiss, Plaintiff says that Sheriff Neal is responsible

for hiring, training, and supervising the employees at the Bowie County Correctional Center. Dkt. No. 18 at 1. He states that Neal is liable for the policies, customs, practices, and procedures within the correctional center and that housing dangerous inmates in protective custody as a way to control them is unconstitutional, as well as negligent supervision and training and a breach of contract with the State.

Plaintiff states that Captain Walker and Sgt. Malone violated his rights under the Eighth Amendment, listing legal theories including deliberate indifference with recklessness, municipal liability, negligent and intentional infliction of emotional distress, cruel and unusual punishment, failure to intervene, and punitive damages. He presents similar arguments concerning Holt, Novell, and Adams.

Plaintiff says that at the time of the incident, he was property of the State, under the care and responsibility of the Sheriff of Bowie County. However, the sheriff breached a contract with the State by failing to protect and care for him. He says that he was told at UT Tyler that the hospital personnel had been told not to wire his mouth, which Plaintiff says was done to cut costs for medical care which he needed. When he complained about discomfort and biting his tongue while he slept, he says that officials sent him to a Bowie County Correctional Center dentist, who referred him to UT Tyler. Plaintiff contends that he was shipped to prison in neglect of his serious medical needs, which brought about more pain and suffering, and he recently lost two teeth as a result of his mouth being out of alignment. He states that he is seeking compensatory and punitive damages.

**III. Discussion**

A. General Standards for Motions to Dismiss

Fed. R. Civ. P. 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief which is plausible on its face. *Butler v. S. Porter*, 999 F.3d 287, 292 (5th Cir. 2021); *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court stated that Rule 12(b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a), which requires "a short and plain statement of the claim

showing that the pleader is entitled to relief." *Id*. at 555.

Fed. R. Civ. P. 8(a) does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Courts need not accept legal conclusions as true, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient. *Id*. at 678.

A plaintiff meets this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," or if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability. *Id*.; *see also Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006). *Pro se* plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations which raise the right to relief above the speculative level. *Chhim v. University of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

If the facts alleged in a complaint do not permit the court to infer more than the mere possibility of misconduct, a plaintiff has not shown entitlement to relief. *Id*. (citing Fed. R. Civ. P. 8(a)(2)). A complaint is properly dismissed if it does not state sufficient facts to set forth a plausible claim or if the claims it raises are merely speculative. *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012).

B. Respondent Superior Liability

The Defendants' motions to dismiss argue that Plaintiff's claims against them are founded upon *respondeat superior* liability. The Fifth Circuit has held that supervisory officials are not vicariously liable under §1983 under any theory of supervisory liability for any actions or omissions

by their employees. *Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415, 419 (5th Cir. 2017); *see also Iqbal*, 556 U.S. at 676 (government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*).

Instead, a plaintiff must show either that the supervisor was personally involved in a constitutional deprivation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation. *Ford v. Anderson County, Texas*, – F.4th –, 2024 U.S. App. LEXIS 506 at *47, 2024 WL 77477 (5th Cir., January 8, 2024), (citing *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018)). Such a causal connection may be found when the supervisor implements unconstitutional policies which causally result in the constitutional injury. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

Plaintiff here has not alleged any facts showing that Sheriff Neal affirmatively participated in acts causing a constitutional deprivation or implemented unconstitutional policies or customs resulting in a constitutional injury. *See Spiller v. City of Texas City, Texas Police Department*, 130 F.3d 162, 167 (5th Cir. 1997) (in order to satisfy the cause in fact requirement, the plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation at issue or that his injuries resulted from the execution of the policy or custom; the description of the policy or custom and its relationship to the underlying constitutional violation cannot be conclusory, but must contain specific facts). Plaintiff's vague allusion to a policy of housing dangerous inmates in protective custody does not set out sufficient facts to show that the policy itself, rather than the alleged actions of Adams and Novell, was the cause of his injury.

Where a pretrial detainee challenges the general conditions, practices, rules, or restrictions of pretrial confinement, the detainee must show (1) that the condition, practice, rule, or restriction exists; (2) that it is not reasonably related to a legitimate governmental objective; and (3) that it caused a violation of the detainee's constitutional rights. *Stevenson-Cotton v. Galveston County*, slip op. no. 22-40841, 2024 U.S. App. LEXIS 913, 2024 WL 138631 (5th Cir. 2024), (citing *Duvall v. Dallas County*, 631 F.3d 203, 207 (5th Cir. 2011)). Plaintiff's conclusory allegations of unspecified policies wholly fail to meet this standard. *See Rios v. Texas*, civil action no. 5:22cv266, 2023 U.S. Dist. LEXIS

225733, 2023 WL 8720901 (N.D.Tex. 2023), *Report adopted at* 2023 U.S. App. LEXIS 224439, 2023 WL 8721439 (N.D.Tex. 2023) (conclusory conditions of confinement claim is not sufficient); *Wilson v. Grimes*, civil action no. 15-00680, 2018 U.S. Dist. LEXIS 248169, 2018 WL 11463727 (M.D.La. 2018) (same).

Plaintiff also refers to a claim against Sheriff Neal for failure to train or supervise his subordinates. In order to hold a defendant supervisor liable on such a theory, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Brauner v. Coody*, 793 F.3d 493, 501 (5th Cir. 2015), (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)).

In order for liability to attach based on an inadequate training claim, the plaintiff must allege with specificity how a particular training program is defective. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). Conclusory allegations of failure to train are not sufficient to set out a claim under 42 U.S.C. § 1983. *Yates v. Unidentified Parties*, 73 F.App'x 19, 2003 U.S. App. LEXIS 14998, 2003 WL 21744384 (5th Cir. 2003), *cert. denied*, 540 U.S. 1123 (2004), (*citing Spiller*, 130 F.3d at 167). Plaintiff's pleadings do not set out any specific facts in support of a failure to train claim, much less allege with specificity how a particular training program is defective.

Similarly, the Fifth Circuit has held that conclusory allegations of failure to supervise are insufficient to set out a constitutional claim. *Silva v. Moses*, 542 F.App'x 308, 2013 U.S. App. LEXIS 20101, 2013 WL 5450799 (5th Cir. 2013), (*citing Roberts*, 397 F.3d at 292). Plaintiff does not set out any specific facts showing an actual failure to supervise, much less that any such failure amounted to deliberate indifference. *See also Bohannan v. Doe*, 527 F.App'x 283, 2013 U.S. App. LEXIS 11834, 2013 WL 2631197 (5th Cir. 2013), *citing Iqbal*, 556 U.S. at 678 (conclusory allegation of failure to adequately supervise and train does not plead a plausible cause of action even when generously read). To the extent Plaintiff raises a claim of failure to train or supervise against Sheriff Neal, he has not stated a claim upon which relief may be granted.

Plaintiff asserts that Sgt. Malone waited four hours before transporting him to the hospital. In

*Johnson v. Richland Parish Detention Center*, civil action no. 18-1091, 2019 U.S. Dist. LEXIS 116047, 2019 WL 3026987 (W.D.La. 2019), *Report adopted at* 2019 U.S. Dist. LEXIS 115103, 2019 WL 3021827 (W.D.La. 2019), the prisoner slipped and fell in a puddle of water, injuring his neck, back, head, nerves, and muscles. He complained that after his fall, he was placed in segregation, where he suffered agonizing pain for four hours before a sergeant named Holcutt, who knew that he had been knocked unconscious, took him to the hospital. However, the prisoner did not allege that Sgt. Holcutt knew he was experiencing agonizing pain or that he otherwise faced a substantial risk of serious harm. The court held that the officer's knowledge of the prisoner's unconsciousness did not plausibly equate to knowledge of a substantial risk of serious harm and that the prisoner did not allege the type of cold-hearted, casual unwillingness to investigate what can be done for a man obviously in desperate need of help which is necessary to constitute deliberate indifference. Consequently, the court dismissed the claim against Sgt. Holcutt for failure to state a claim.

Similarly, in *Hardin v. LeBlanc Unit Medical Staff*, civil action no. 1:19cv399, 2020 U.S. Dist. LEXIS 246127, 2020 WL 7873037 (E.D.Tex. 2020), *Report adopted at* 2021 U.S. Dist. LEXIS 121, 2021 WL 25628 (E.D.Tex. 2021), the prisoner complained that he slipped on a wet floor and hit his head on a steel bunk. There was not a doctor on the unit and the prisoner had to wait three hours before being sent to the hospital. The court stated that "while the delay plaintiff experienced was regrettable, his allegations do not indicate the delay caused his condition to become worse or changed the ultimate course of treatment. Based on his allegations, it cannot be concluded that the delay plaintiff experienced resulted in substantial harm. As a result, he has failed to state a claim upon which relief may be granted."

Plaintiff has likewise failed to allege that Sgt. Malone knew the extent of his injuries, nor that Plaintiff suffered substantial harm resulting from the delay in taking him to the hospital. This allegation fails to state a claim upon which relief may be granted.

Plaintiff also contends that Sgt. Malone failed to make sure that he received his liquid diet and that there were several days in which he went without eating, or in which his meals were delayed. It is not entirely clear from Plaintiff's pleading whether Malone is sued for being the shift supervisor with

the responsibility of seeing that he was fed, or if she was personally involved in denying him food. It is also not clear whether Plaintiff was denied all food on consecutive days, or some food on consecutive days, or all or some food on non-consecutive days. The Fifth Circuit has explained that a continuous deprivation of food presents a set of facts under which a prisoner may be entitled to relief. *Cooper v. Sheriff, Lubbock County, Texas*, 929 F.2d 1078, 1083 (5th Cir. 1991). Under the circumstances, the Court has determined that Sgt. Malone's motion to dismiss as to this point should be denied at this time, without prejudice to re-asserting if necessary, and Plaintiff should be given the opportunity to amend his complaint by filing a statement setting out specific facts concerning his claim against Sgt. Malone with regard to his meals, including whether he is suing Malone because she was shift supervisor or because she had personal involvement with his meals, and the circumstances of the denial of his meals, including whether these denials took place on consecutive days and whether he was denied all meals on those days that the denials took place, even when Malone was not on duty or present at the jail.

C. Captain Walker

Plaintiff complains that Captain Walker put him in medical observation, which he says is equivalent to solitary confinement. The fact that he was put in medical observation after suffering a severe injury does not amount to a constitutional violation, even if Plaintiff likens this status to solitary confinement. Plaintiff does not have a liberty interest in remaining free from medical observation status. *See generally Toson v. Taylor*, slip op. no. 23-10793, 2023 U.S. App. LEXIS 31738, 2023 WL 8271965 (5th Cir. 2023) (prisoners have no recognizable due process liberty interests in their custodial classification or various inmate privileges).

The Fifth Circuit has explained that whether a prisoner has raised a valid liberty interest as a result of continued solitary confinement turns on whether that custodial status demonstrates extraordinary circumstances or, in other words, atypical and significant hardship. *Escobarrivera v. Whitaker*, slip op. no. 21-30147, 2022 U.S. App. LEXIS 33223, 2022 WL 17352178 (5th Cir. 2022), *citing Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014).

Plaintiff has not shown that confinement in medical isolation after a serious injury amounted to

an atypical and significant hardship in relation to the ordinary incidents of prison life. While he complains about the lighting, in *Chavarria v. Stacks*, 102 F.App'x 433, 435-36 (5th Cir. 2004), the prisoner complained that bright florescent lights and light bulbs completely illuminated his cell 24 hours a day while he was confined in administrative segregation, the most dangerous part of the prison, and that as a result, he could not sleep. He was told in response to a grievance that the lights were necessary for security reasons. The district court determined that the prisoner had failed to show a constitutional violation because there was no evidence he had complained to medical personnel about lack of sleep and because the policy was a reasonable security measure. On appeal, the Fifth Circuit concluded that the prisoner had not shown that the deprivation was unnecessary and wanton, determining that the policy was reasonably related to legitimate penological interests and thus did not violate the Eighth Amendment.

Plaintiff here states that he was in medical observation after suffering a serious injury, indicating that a legitimate penological purpose existed for the lighting - so that he could be observed. Plaintiff does not allege that he suffered any harmful effects from the lighting in his observation cell, nor that he ever complained to medical personnel about any such harmful effects or filed a grievance about the lighting. *Cf. Chavarria*, 102 F.App'x at 437 (Reavley, J., concurring) (noting that prisoner could put cloth over his eyes to block the light). The fact that Plaintiff did not have access to a television or radio while in medical observation likewise does not show an atypical or significant hardship. *See Rhine v. City of Mansfield*, 499 F.App'x 334, 335 (5th Cir. 2012) (denial of television, microwave, and hot plate did not show an atypical or significant deprivation). Plaintiff has not shown an atypical or significant hardship in relation to the ordinary incidents of prison life, nor any constitutional violation in the fact that Captain Walker had him put in medical observation after the assault by Jones.

Plaintiff also complains that Captain Walker did not contact the kitchen to ensure that he was fed and did not make sure that he had hot water to mix the powder for his liquid diet. As stated above, the fact that he may have occasionally missed meals or been unable to mix his liquid diet does not show a constitutional violation, particularly in the absence of any allegation, much less evidence, of deliberate indifference or harm. *Lee*, 2011 U.S. Dist. LEXIS 140114 at *30. Plaintiff's claim of a failure

13

to contact the kitchen or ensure that hot water was supplied amounts to an allegation of negligence and does not rise to the level of deliberate indifference. This allegation fails to state a claim upon which relief may be granted.

D. The Other Defendants

The docket does not contain proof of service showing that any of the other Defendants in the lawsuit - Sgt. Holt, Officer Novell, and Officer Adams - were properly served with process as directed by the Court's order of May 18, 2023 (Dkt. No. 4). The motion to dismiss filed by Sheriff Neal asserts that he received process directed to him, listing the names of other Defendants on the envelope, but Holt, Novell, and Adams no longer worked there. This is not proper service of process for multiple reasons. As stated in the Court's order, service may be done by following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located, or by doing one of the following: delivering a copy of the summons and complaint to the defendant personally; leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or delivering a copy of each to an agent authorized by law to receive service of process. The order specifically explained and highlighted that service must be effected by a person not a party to the lawsuit.

There is no showing that Sheriff Neal is an agent authorized to receive service of process directed at former deputies no longer employed by the Sheriff's Department. *See Ancar v. Robertson*, slip op. no. 19-30524, 2022 U.S. App. LEXIS 15261, 2022 WL 1792535 (5th Cir. 2022) (service of process at the correctional institution was not effective as to defendants who no longer worked there); *cf. Carter v. City of Thibodaux Police Department ex rel. City of Thibodaux*, civil action no. 13-105, 2013 U.S. Dist. LEXIS 148184, 2013 WL 5673570 (E.D.La. 2013) (service directed to "the duty officer of the Thibodaux Police Department" was insufficient because the persons handed the summons and complaint were not the defendants named and service on an agent is only satisfactory if the agent is authorized by law or appointment to receive it).

Furthermore, the envelopes reflect that Plaintiff attempted service himself, which necessarily renders the service improper under Fed. R. Civ. P. 4(c)(2) (requiring service to be effected by a person

14

not a party to the lawsuit). The Defendants Sheriff Neal, Sgt. Malone and Captain Walker did not raise a defense of improper service in their motions to dismiss or answers subject to the motions to dismiss and therefore waived any such defense under Fed. R. Civ. P. 12(h)(1); however, Plaintiff's failure to effect proper service upon Holt, Novell, and Adams renders these Defendants amenable to dismissal under Fed. R. Civ. P. 4(m). In the interest of justice, however, the statute of limitations should be suspended for a reasonable period of time to permit Plaintiff to refile his lawsuit in the event that he can locate any of these Defendants.

**IV. Conclusion**

In proceeding under Fed. R. Civ. P. 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon. These procedures alert him to the legal theory underlying the defendants' challenge and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid cause of action. This adversarial process also crystallizes the pertinent issues and facilitates appellate review of a trial court dismissal by creating a more complete record of a case. *Neitzke v. Williams*, 490 U.S. 319, 329-30, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff here had the opportunity to respond to the Defendants' motion to dismiss and filed two responses to these motions. A review of the pleadings, viewed with the liberality befitting his *pro se* status, demonstrates that Plaintiff has failed to state a claim upon which relief may be granted as to the Defendants Sheriff Neal and Captain Walker, and as to Sgt. Malone on the issue of delay in taking him to the hospital. The Defendants Sheriff Neal and Captain Walker should be dismissed from the lawsuit with prejudice. *Sepulvado v. Louisiana Board of Pardons and Parole*, 114 F.App'x 620, 2004 WL 2491678 (5th Cir., November 5, 2004), *citing Hitt v. Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

<u>RECOMMENDATION</u>

It is accordingly recommended that the motions to dismiss of the Defendants Sheriff Neal

and Captain Walker (Dkt. No.'s 11 and 13) be granted and the Plaintiff's claims against these Defendants be dismissed with prejudice for failure to state a claim upon which relief may be granted. It is further recommended that the Defendant Sgt. Malone's motion to dismiss be granted as to the claim of delay in taking him to the hospital, and denied without prejudice as to the Plaintiff's claim of denial of food. It is further recommended that Plaintiff be directed to amend his complaint within 30 days of the date of receipt of this order to set out specific facts concerning his claim of denial of food. Finally, it is recommended that the claims against the remaining Defendants be dismissed without prejudice for failure to effect service of process, with the statute of limitations on these claims suspended for a period of 60 days following date of entry of final judgment to give Plaintiff the opportunity to locate these Defendants so that process may be properly served.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

SIGNED this the 2nd day of February, 2024.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE